**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

---

JEFFREY MISHKIN, Individually       1:22-cv-06127-NLH-EAP
and On Behalf of All Others
Similarly Situated                  OPINION
            Plaintiff,

     v.

VOLKSWAGEN GROUP OF AMERICA,
INC., A NEW JERSEY
CORPORATION,
            Defendant.

---

Appearances:

JAMES E. CECCHI
CARELLA BYRNE CECCHI OLSTEIN BRODY & AGNELLO, P.C.
5 BECKER FARM ROAD
ROSELAND, N.J. 07068

     *On behalf of Plaintiff*

HOMER B. RAMSEY
SHOOK, HARDY & BACON L.L.P.
1 ROCKEFELLER PLAZA
FLOOR 28
NEW YORK, N.Y. 10020

C. MICHAEL ROWAN, JR.
HERZFELD & RUBIN, LLC
354 EISENHOWER PARKWAY
LIVINGSTON, N.J. 07039

     *On behalf of Defendant Volkswagen Group of America, Inc.*

**HILLMAN**, District Judge

     Pending before the Court is Defendant Volkswagen Group of
America, Inc.'s ("VGA") motion to dismiss.  (ECF 41).  For the
reasons expressed below, VGA's motion will be granted in part

and denied in part.

## I.  Background

VGA is an entity incorporated in New Jersey and headquartered in Herndon, Virginia that imports, distributes, sells, markets, services, or warrants "class vehicles" through its network of dealerships.  (ECF 1 at ¶¶ 10-11).  Class vehicles are defined in the complaint as "any 2012 through 2017 model year Audi vehicles equipped with a 2.0-liter turbocharged engine . . . . includ[ing] the following Audi models: TT, A3, A4, A5, A6, Q3, and Q5."  (Id. at ¶ 1 n.1).  Plaintiff Jeffrey Mishkin ("Plaintiff") is a resident of St. Louis, Missouri who purchased a used 2013 Audi Q5 2.0T from a dealer in St. Peters, Missouri on April 17, 2017 and asserts that he represents a class of "[a]ll persons or entities in the state of Missouri who purchased or leased a Class Vehicle."  (Id. at ¶¶ 9, 17, 123).

Plaintiff alleges that his vehicle has had a long history of burning excessive oil and that he has taken it to be serviced on at least three separate occasions to attempt to rectify the issue but has been unsuccessful.  (Id. at ¶¶ 9, 18).  Plaintiff first took his vehicle to Bob's Transmission and Automotive Service in Maryland Heights, Missouri and RPM Car Care, Inc. in Brentwood, Missouri on or about September 9, 2021 and September 28, 2021, respectively, both resulting in extensive testing and cylinder repairs.  (Id. at ¶¶ 19-20).  Plaintiff was informed at

2

RPM Car Care, Inc. that the oil-consumption problem was caused by "a scoring issue that affected the piston rings." (Id. at ¶ 20). Finally, on or about October 28, 2021, Plaintiff took his vehicle to Plaza Audi, a certified dealership in Creve Coeur, Missouri, where additional testing was performed and it was recommended to Plaintiff that the vehicle's pistons be replaced at an estimated cost of $9,342.10. (Id. at ¶ 21).

Plaintiff claims that he reviewed warranty materials, advertisements, and promotional literature prior to his purchase, but VGA failed to disclose the fact that class vehicles suffer from a piston defect that could result in excessive oil usage and engine failure. (Id. at ¶¶ 23-24, 27-28). The alleged design, manufacturing, or workmanship defect results in piston rings failing to seal properly and the inability to sustain engine heat and pressure – resulting in fracture and further leading to potential complications including excessive oil consumption, loss of compression, circulation of piston remnants in the fuel system, and total or partial loss of engine power. (Id. at ¶¶ 37-38, 41-42). VGA's alleged omissions were material to Plaintiff because, had the defect been disclosed, Plaintiff would have been aware of it and either declined to purchase his vehicle or paid less for it. (Id. at ¶ 25).

There have been numerous complaints regarding the 2.0-liter

turbocharged engine since its broad release in 2009, according to Plaintiff, and VGA acquired information regarding the alleged defect via sources unavailable to Plaintiff and class members, including testing, complaints, and sales data of replacement parts. (Id. at ¶¶ 39-40, 44, 47-48). VGA did not disclose the existence of the alleged defect, however, and instead took affirmative steps to conceal it such as issuing a Technical Service Bulletin to authorized repair facilities but not class members. (Id. at ¶ 43). VGA is required to disclose defects and related information to the National Highway Traffic Safety Administration ("NHTSA") and monitors NHTSA complaints as part of its efforts to identify defects. (Id. at ¶¶ 52-53, 85). Plaintiff asserts that VGA unlawfully failed to disclose the defect – the knowledge of which was in its exclusive control – and thus induced Plaintiff and class members into purchasing vehicles they would not have otherwise purchased or paid less for and inflated the secondary vehicle market. (Id. at ¶¶ 76-84, 86-87).

The complaint brings forth four counts alleging (1) violations of the Missouri Merchandising Practices Act ("MMPA"), (2) fraud by concealment or omission, (3) negligent misrepresentation, and (4) unjust enrichment. (Id. at p. 39-47). Plaintiff seeks orders certifying the class action, requiring VGA to cease its alleged conduct, enjoining VGA from

4

further concealment, and requiring that Plaintiff and class
members be refunded the cost of class vehicles or repairs;
compensatory, actual, treble, punitive, and statutory damages;
reasonable attorney's fees and costs; and other relief
determined to be just and appropriate.  (Id. at p. 47-48).

This action was filed in the United States District Court
for the Eastern District of Missouri on June 23, 2022. (See
generally id.).  Defendant moved to dismiss or transfer on
September 12, 2022.  (ECF 14; ECF 15).  United States District
Judge Sarah E. Pitlyk, in an October 11, 2022 memorandum and
order, transferred the case to this District pursuant to the
first-filed rule in light of the similar action before this
Court, Rieger v. Volkswagen Group of America, Inc. (Docket No.
1:21-cv-10546).  (ECF 26 at 2-4).[1]

Following transfer, this Court directed the parties to
refile the motion to dismiss and related opposition and reply in
accordance with the Local Civil Rules.  (ECF 36).  VGA
thereafter refiled its motion to dismiss, (ECF 41), which was

---

[1] VGA's supporting brief asserts that Plaintiff's "copy-cat"
action on behalf of himself and the Missouri class "is already
encompassed within Rieger's putative nationwide class."  (ECF
41-1 at 3).  In a recent opinion, this Court held that the
Rieger plaintiffs "fail[ed] to establish standing to bring
common-law claims on behalf of a nationwide class" and dismissed
the plaintiffs' fraud claims without prejudice to the extent
that they were not brought on behalf of represented sub-classes.
Rieger v. Volkswagen Grp. of Am., Inc., No. 1:21-cv-10546, 2023
WL 3271116, at *5-6 (D.N.J. May 4, 2023).

followed by a timely opposition, (ECF 46), and reply, (ECF 48).

## II. Discussion

### A. Jurisdiction

The Court exercises jurisdiction over this matter pursuant to the Class Action Fairness Act of 2005, which provides district courts with original jurisdiction over class actions in which the matter in controversy exceeds $5 million exclusive of interest and costs and the parties are minimally diverse, i.e., any class member is a citizen of a different state than any defendant.  See 28 U.S.C. § 1332(d)(2).

### B. Motions to Dismiss

In advance or in lieu of an answer to a complaint, a defendant may move to dismiss a complaint for failure to state a claim upon which relief can be granted.  See Fed. R. Civ. P. 12(b)(6).  To survive dismissal under Rule 12(b)(6), "a complaint must provide 'a short and plain statement of the claim showing that the pleader is entitled to relief,'" Doe v. Princeton Univ., 30 F.4th 335, 341 (3d Cir. 2022) (quoting Fed. R. Civ. P. 8(a)(2)), and – accepting the plaintiff's factual assertions, but not legal conclusions, as true – "'plausibly suggest[]' facts sufficient to 'draw the reasonable inference that the defendant is liable for the misconduct alleged,'" id. at 342 (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 557 (2007) and Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)).  Courts

6

further evaluate the sufficiency of a complaint by "(1) identifying the elements of the claim, (2) reviewing the complaint to strike conclusory allegations, and then (3) looking at the well-pleaded components of the complaint and evaluating whether all of the elements identified in part one of the inquiry are sufficiently alleged." Malleus v. George, 641 F.3d 560, 563 (3d Cir. 2011).

"When a complaint involves allegations of fraud, a plaintiff must meet the heightened pleading requirements of Rule 9(b) to state a claim under Rule 12(b)(6)." Franchitti v. Cognizant Tech. Sols. Corp., 555 F. Supp. 3d 63, 68 (D.N.J. Aug. 17, 2021) (citing Foglia v. Renal Ventures Mgmt., LLC, 754 F.3d 153, 155 (3d Cir. 2014)); see also Fed. R. Civ. P. 9(b) (stating that a plaintiff alleging fraud "must state with particularity the circumstances constituting fraud," though conditions of the mind such as knowledge may be pled generally). "In order to satisfy Rule 9(b), a complaint must provide 'all of the essential factual background that would accompany "the first paragraph of any newspaper story" – that is, the "who, what, when, where and how" of the events at issue.'" United States v. Eastwick Coll., 657 F. App'x 89, 93 (3d Cir. 2016) (quoting In re Rockefeller Ctr. Props., Inc. Secs. Litig., 311 F.3d 198, 217 (3d Cir. 2002)). This standard has been relaxed slightly for fraudulent omission claims where pleading specific times and

7

places may not be practicable and, instead, Rule 9(b) may be
satisfied by "alleg[ing] what the omissions were, the person
responsible for failing to disclose the information, the context
of the omission and the manner in which it misled plaintiff and
what defendant obtained through the fraud." See Johansson v.
Cent. Garden & Pet Co., 804 F. Supp. 2d 257, 264 (D.N.J. May 26,
2011) (quoting Luppino v. Mercedes-Benz USA, LLC, No. 09-5582,
2010 WL 3258259, at *7 (D.N.J. Aug. 16, 2010)).

**III. Analysis**

**A. Counts 1 & 2 – Plaintiff's MMPA and Fraud Claims**

The parties discuss Plaintiff's MMPA and fraud claims in
tandem and the Court will follow suit here.  To state a claim
under the MMPA, "the plaintiff must plead that he or she (1)
purchased merchandise (which includes services) from the
defendant, (2) for personal, family, or household purposes, and
(3) suffered an ascertainable loss of money or property, (4) as
a result of an act declared unlawful by section 407.020." Cupit
v. Dry Basement, Inc., 592 S.W.3d 417, 423 (Mo. Ct. App. 2020)
(citing Murphy v. Stonewall Kitchen, LLC, 503 S.W.3d 308, 311
(Mo. Ct. App. 2016)).

Acts deemed unlawful under the MMPA include "fraud, false
pretense, false promise, misrepresentation, unfair practice or
the concealment, suppression, or omission of any material fact
in connection with the sale or advertisement of any merchandise

in trade or commerce."  Mo. Ann. Stat. § 407.020.1.  The
heightened pleading standard of Federal Rule of Civil Procedure
9(b) applies to MMPA claims.  Hays v. Nissan N. Am. Inc., 297 F.
Supp. 3d 958, 962 (W.D. Mo. Oct. 27, 2017).  "[C]onsumer
protection is paramount under the MMPA and its prohibitions are
construed broadly."  Hawkins v. Nestle U.S.A. Inc., 309 F. Supp.
3d 696, 702 (E.D. Mo. Feb. 16, 2018).

Meanwhile, to state a claim of fraud under Missouri law, a
plaintiff must plead:

> (1) a representation; (2) its falsity; (3) its
> materiality; (4) the speaker's knowledge of its
> falsity or ignorance of its truth; (5) the speaker's
> intent that it should be acted on by the person and in
> the manner reasonably contemplated; (6) the hearer's
> ignorance of the falsity of the representation; (7)
> the hearer's reliance on the representation being
> true; (8) the hearer's right to rely thereon; and (9)
> the hearer's consequent and proximately caused injury.

> Browning v. Anheuser-Busch, LLC, 539 F. Supp. 3d 965,
> 973 (W.D. Mo. May 13, 2021) (quoting Hess v. Chase
> Manhattan Bank, USA, N.A., 220 S.W.3d 758, 765 (Mo.
> 2007)).

When fraud is based on nondisclosure as opposed to an
affirmative misrepresentation, silence when there is a legal
duty to disclose replaces the first element.  Hess, 220 S.W.3d
at 765.  Such a duty may arise from "a relationship of trust and
confidence between the parties or where one of the parties has
superior knowledge not within the fair and reasonable reach of
the other party."  McGowan v. Am. Fam. Ins. Co., No. 17-04038,

2017 WL 11680965, at *3 (W.D. Mo. Dec. 15, 2017) (quoting <u>Zubres</u>
<u>Radiology v. Providers Ins. Consultants</u>, 276 S.W.3d 335, 340
(Mo. Ct. App. 2009)).

VGA contends that the complaint's allegations are
conclusory and fail to satisfy Rule 9(b).  (ECF 41-1 at 10-11;
ECF 48 at 2-3).  The two Technical Service Bulletins – neither
of which address a piston defect – and NHTSA and other third-
party complaints cited in the complaint – only one of which
predates Plaintiff's purchase[2] – do not evidence knowledge of the
alleged defect, according to VGA, and Plaintiff's allegation
that VGA possessed knowledge of the alleged defect via dealer
data, product testing, and the like is likewise too vague.  (ECF
41-1 at 11-14).  VGA further argues that Plaintiff has failed to
demonstrate reliance or causation because he has not pled what
materials he viewed prior to purchase, their content, or how
they were provided by VGA when Plaintiff purchased his used car
from a third-party dealer.  (ECF 48 at 5-7).

To the latter point, Plaintiff does not dispute that he
purchased his Audi vehicle from a third party and concedes that
point in his opposition.  (ECF 46 at 17-18).[3]   To the extent

---

[2] The complaint indicates that the quoted complaints are non-
exhaustive, but rather provide a "sampling."  (ECF 1 at ¶ 93).

[3] VGA attached to its motion a CARFAX vehicle history report and
a declaration from the senior manager of its Product Analysis
Group to demonstrate that Plaintiff's vehicle was sold to its

that VGA's argument may be interpreted as arguing that Plaintiff's third-party purchase is fatal to his MMPA claim, the Court disagrees.  In Gibbons v. J. Nuckolls, Inc., the defendant dealership purchased a car from the defendant wholesaler and then sold it to the plaintiff.  216 S.W.3d 667, 668 (Mo. 2007).  The plaintiff was told that the vehicle had never been in an accident and, when he discovered that it had been prior to the dealership's purchase, he sued both the dealership and wholesaler under the MMPA with the trial court granting the wholesaler's motion to dismiss for lack of privity.  Id.

The Supreme Court of Missouri, sitting en banc, reversed – finding that "the statute's plain language does not contemplate a direct contractual relationship between plaintiff and defendant, and Missouri courts have not imposed such a requirement through statutory construction."  Id. at 669-70.  Federal decisions interpreting Gibbons provide further support that Plaintiff may still bring his MMPA claim despite not purchasing his vehicle directly from VGA.  See Sonneveldt v.

original purchaser in July 2013 and that Plaintiff did not purchase it from an authorized Audi dealer nor was it purchased as a certified pre-owned Audi vehicle.  (ECF 41-2; ECF 41-3).  The Court has not relied on these exhibits in drafting this opinion.  See Doe v. Univ. of Scis., 961 F.3d 203, 208 (3d Cir. 2020)("To decide a motion to dismiss, courts generally consider only the allegations contained in the complaint, exhibits attached to the complaint[,] and matters of public record." (alteration in original) (quoting Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993))).

Mazda Motor of Am., Inc., No. 8:19-cv-01298, 2022 WL 17357780, at *28 (C.D. Cal. Oct. 21, 2022), other classes decertified, No. 8:19-cv-01298, 2023 WL 1812157 (C.D. Cal. Jan. 25, 2023) ("It is not necessary under the MMPA for a consumer to have purchased directly from the seller who is alleged to have engaged in the unlawful practice."); Torp v. Gen. Motors Acceptance Corp., No. 05-1042, 2007 WL 2811437, at *3 (W.D. Mo. Sept. 24, 2007) (denying summary judgment as to the plaintiffs' MMPA claim).

The Court reaches the same conclusion with respect to Plaintiff's fraud claim.  In Freeman v. Myers, the plaintiff and her husband purchased a car that had its odometer rolled back by the seller's predecessor in title and the plaintiff testified at trial that she relied on the odometer and odometer statement prior to purchase and would not have purchased the car if the odometer had shown its actual mileage.  774 S.W.2d 892, 893 (Mo. Ct. App. 1989).  On appeal, the Missouri Court of Appeals concluded that the fact that the misrepresentation was not made directly to the plaintiff and her husband did not provide a defense.  Id. at 893-94; see also Flynn v. CTB, Inc., No. 1:12-CV-68, 2015 WL 5692299, at *10 (E.D. Mo. Sept. 28, 2015) ("Missouri recognizes a cause of action for fraud that involves alleged fraudulent misrepresentations (and omissions) involving a third party." (citing Freeman, 774 S.W.2d at 893-94 and Pelster v. Ray, 987 F.2d 514, 523 (8th Cir. 1993))).

12

Moving to VGA's knowledge argument, a MMPA omission claim requires scienter, which may be met "(1) from facts demonstrating a mental state embracing an intent to deceive, manipulate, or defraud; (2) from conduct which rises to the level of severe recklessness; or (3) from allegations of motive and opportunity." Hays, 297 F. Supp. 3d at 963 (citing Armstrong v. Am. Pallet Leasing Inc., 678 F. Supp. 2d 827, 857 (N.D. Iowa Aug. 26, 2009)); see also Hope v. Nissan N. Am., Inc., 353 S.W.3d 68, 84 (Mo. Ct. App. 2011) ("[O]mission of a material fact under the MMPA does have a scienter requirement: it is a failure to disclose material facts that are 'known to him/her, or upon reasonable inquiry would be known to him/her.'" (alteration in original) (quoting Plubell v. Merck & Co., Inc., 289 S.W.3d 707, 713 n.4 (Mo. Ct. App. 2009))).

Similarly, "[a] plaintiff seeking to recover for fraudulent concealment must show all of the following: (1) the fact was not within the fair and reasonable reach of the plaintiff; (2) the plaintiff was unable to discover the concealed information; and (3) plaintiff exercised reasonable diligence." Ford v. R.J. Reynolds Tobacco Co., 553 F. Supp. 3d 693, 702 (E.D. Mo. Aug. 11, 2021) (quoting Littlefield v. Edmonds, 172 S.W.3d 903, 907 (Mo. Ct. App. 2005)). Concealment or omission claims require specificity as to the time and place of the alleged actions, who made the representations, and what was obtained or given as a

13

result.  Id. (fraudulent concealment); Elfaridi v. Mercedes-Benz USA, LLC, No. 4:16 CV 1896, 2018 WL 4071155, at *4 (E.D. Mo. Aug. 27, 2018) (MMPA).

Here, Plaintiff alleges that he reviewed VGA's warranty, advertising, and promotional materials prior to his purchase, none of which disclosed the alleged defect.  (ECF 1 at ¶ 24). VGA knew of the alleged piston defect, according to Plaintiff, via complaints to dealers, customer service hotlines, and on the NHTSA database; testing conducted both pre-release and in response to complaints; replacement-parts sales data; repair and warranty data; and similar sources unavailable to consumers. (Id. at ¶¶ 39, 44, 47-51, 53, 81, 90, 93).  Plaintiff attributes VGA's alleged omissions to "corporate greed" – the opportunity to maintain value for its vehicles and avoid paying for repairs under warranties.  (Id. at ¶¶ 61, 110).

The Court has considered VGA's challenges regarding the sufficiency of the Technical Service Bulletins and complaints cited and efforts to distinguish the cases relied upon by Plaintiff.  It nonetheless is guided by the fact that "[t]he MMPA is 'paternalistic legislation designed to protect those that could not otherwise protect themselves,'" Berry v. Volkswagen Grp. of Am., Inc., 397 S.W.3d 425, 433 (Mo. 2013) (quoting Huch v. Charter Commc'ns, Inc., 290 S.W.3d 721, 725-26 (Mo. 2009)), and that "[u]nder the MMPA a plaintiff need not

prove that he relied on the acts or omissions complained of or
that they induced the sale or purchase," Stephens v. Arctic Cat
Inc., No. 4:09-CV-02131, 2012 WL 628867, at *4 (E.D. Mo. Feb.
27, 2012) (citing Schuchmann v. Air Servs. Heating & Air
Conditioning, Inc., 199 S.W.3d 228, 232 (Mo. Ct. App. 2006)).

Reading the complaint in the light most favorable to
Plaintiff and taking the alleged means by which VGA allegedly
knew or should have known of the defect together, the Court
holds that dismissal here would be inappropriate.  See Dack v.
Volkswagen Grp. of Am., 565 F. Supp. 3d 1135, 1146 (W.D. Mo.
Sept. 30, 2021) (concluding that the plaintiffs' allegation that
the defendant knew of the defect via NHTSA complaints in
addition to other, internal data was sufficient to survive
dismissal); Hays, 297 F. Supp. 3d at 963 (denying the
defendant's motion to dismiss when the plaintiff alleged that
the defendant implemented a change remedying the defect,
marketed vehicles to induce their purchase, and failed to
disclose that the class vehicles' defect would lead to premature
floorboard corrosion).

The Court will likewise deny VGA's motion to dismiss as to
Plaintiff's fraud claim on substantially the same grounds.  See
Matanky v. Gen. Motors LLC, 370 F. Supp. 3d 772, 794-95 (E.D.
Mich. Mar. 29, 2019) (denying the defendant's motion to dismiss
the Missouri plaintiff's fraudulent concealment claim upon the

allegation that the defect was known or accessible only to the
defendant and that such facts were not known or reasonably
discoverable by the plaintiff, the plaintiff relied on the
defendant's deception, and the plaintiff had no means of knowing
the false, misleading, or incomplete nature of the
representations); see also Presley v. Dometic Corp., No. 1:20-
CV-218, 2021 WL 2222686, at *3 (E.D. Mo. June 2, 2021)
(concluding that the plaintiffs adequately alleged reliance by
pleading that they reasonably relied on the defendant's
omissions and that, had the safety risks been disclosed, they
"would have acted differently to protect themselves from the
risk").  As has been recognized in at least one other district,
the duty to disclose under Missouri law when the defendant
possesses superior knowledge "leaves significantly more leeway
for the Court to find a duty to disclose" than under the common
laws of other states.  See In re Takata Airbag Prods. Liab.
Litig., 524 F. Supp. 3d 1266, 1290-91 (S.D. Fla. Mar. 9, 2021).
The Court agrees and holds that the allegations in the complaint
are therefore sufficient to proceed past the dismissal stage.

**B. Count 3 – Plaintiff's Negligent-Misrepresentation Claim**

The Court next moves to Count 3, Plaintiff's negligent-
misrepresentation claim.  The elements of negligent
misrepresentation under Missouri law are (1) a defendant's
provision or omission of information in the course of business,

16

(2) the information's falsity due to the defendant's failure to exercise reasonable care, (3) the information was provided from the defendant to the plaintiff in the course of a business transaction, and (4) justifiable reliance and pecuniary loss on the part of the plaintiff.  Gillan v. Wright Med. Tech. Inc., 396 F. Supp. 3d 844, 849 (E.D. Mo. June 12, 2019) (citing Moses.com Sec., Inc. v. Comprehensive Software Sys., Inc., 406 F.3d 1052, 1065 (8th Cir. 2005)).

VGA contends that Plaintiff's negligent-misrepresentation claim is barred by the economic-loss doctrine.  (ECF 41-1 at 14-15).[4]  Missouri's economic-loss doctrine limits remedies for product defects to the warranty provisions of the Uniform Commercial Code and bars recovery for negligence or strict liability "where the only damage is to the product sold." Dannix Painting, LLC v. Sherwin-Williams Co., 732 F.3d 902, 906 (8th Cir. 2013) (quoting Sharp Bros. Contracting Co. v. Am. Hoist & Derrick Co., 703 S.W.2d 901, 903 (Mo. 1986)).  Missouri courts thus bar tort claims that seek to recover economic losses unless such claims are based on misrepresentations independent of the contract.  W. Silver Recycling, Inc. v. Nidec Motor Corp., 509 F. Supp. 3d 1106, 1115 (E.D. Mo. Dec. 24, 2020).  In determining whether misrepresentations are independent of the

---

[4] VGA did not argue that Plaintiff's fraud claim is barred by the economic-loss doctrine, (ECF 41-1 at 8-14), and the Court therefore did not conduct such an analysis.

contract, courts look to whether the alleged misrepresentation was incorporated into the contract and whether the plaintiff has suffered damages outside of the contract.  Id.

In his opposition, Plaintiff counters that his claims fit under the public-duty exception to the economic-loss doctrine as recognized by B.L. Jet Sales, Inc. v. Alton Packaging Corp., 724 S.W.2d 669 (Mo. Ct. App. 1987), and that he has adequately pled VGA's failure to disclose defects as required by statute and regulation.  (ECF 46 at 12-13).  Plaintiff also claims that the economic-loss doctrine does not apply because his claims concern how his purchase was influenced by VGA, not the ultimate value or quality of his car.  (Id. at 13-14).

Plaintiff's contention regarding influence relies on the Western District of Missouri's decision in McCoy v. Walmart, Inc. in which the plaintiff purchased gift cards that had been tampered with and the plaintiff claimed that Walmart knew or should have known of the tampering through customer complaints. No. 18-03256, 2019 WL 13207573, at *1 (W.D. Mo. Aug. 12, 2019). The court concluded that the economic-loss doctrine did not bar the plaintiff's negligent-misrepresentation claim because "the claim depend[ed] upon whether Walmart's representations and/or omissions improperly influenced Plaintiff's decision to purchase a gift card and not on the value or quality of the gift card." Id. at *4.

Here, Plaintiff alleges that VGA induced him and class members to purchase their vehicles by concealing the defect, but directly ties this allegation to the quality of class vehicles – stating that Plaintiff and class members would have otherwise paid less for their vehicles or not purchased them at all and that the alleged misrepresentations and omitted facts "concern[ed] the standard, quality, or grade of the Class Vehicles."  (ECF 1 at ¶¶ 76, 78, p. 45-46).  In other words, the complaint refers to "the value or quality" of class vehicles. See McCoy, 2019 WL 13207573, at *4.

In this respect, the Court finds the present issue to be more analogous to the Eastern District of Missouri's recent decision in Crown Foods, Inc. v. Mercedes-Benz USA, LLC, in which the plaintiffs alleged that the purchased vehicle exhibited near-immediate mechanical issues that were not covered by the plaintiffs' extended warranty.  No. 4:22-CV-663, 2022 WL 17338083, at *1 (E.D. Mo. Nov. 30, 2022).  Relying on Dannix Painting, LLC, the court concluded that the economic-loss doctrine applied to the plaintiffs' negligent-misrepresentation claim despite allegations that the misrepresentations preceded the contract "because the subject matter of the alleged misrepresentations – the Vehicle itself and the terms of the extended warranty – were incorporated into the contract for the purchase of the Vehicle and the extended warranty" and "not

independent from the sale for the Vehicle or the purchase of the extended warranty." Id. at *7.

Plaintiff's public-duty argument relies on B.L. Jet Sales, Inc., in which the plaintiff alleged that the defendant had a duty to enter repairs made on the relevant plane in logbooks, negligently failed to do so after extensive repairs, and that – relying on the logbooks – the plaintiff purchased the plane and thereafter sold it. 724 S.W. 2d at 670-71. The Missouri Court of Appeals rejected the defendant's economic-loss argument, concluding that the plaintiff alleged that federal regulations – which were not before the court – required logbook entries and "that it c[ould] be inferred from the petition that the regulations create[d] a public duty on the part of [the defendant], and that [the plaintiff] belong[ed] to the 'class of persons for whose benefit the duty is created.'" Id. at 672-73 (quoting Restatement (Second) of Torts § 552(3) (1977)).

Federal courts in Missouri have declined to apply B.L. Jet Sales, Inc., however, due in part to the appellate court's perceived failure to support its decision. See Nestlé Purina Petcare Co. v. Blue Buffalo Co. Ltd., 181 F. Supp. 3d 618, 640 (E.D. Mo. Apr. 19, 2016) (citing Bruce Martin Constr., Inc. v. CTB, Inc., No. 1:10-CV-205, 2012 WL 718624, at *4 (E.D. Mo. Mar. 6, 2012), aff'd, 735 F.3d 750 (8th Cir. 2013) and Dannix Painting, LLC v. Sherwin-Williams, No. 4:12 CV 01640, 2012 WL

20

6013217, at *2–3 (E.D. Mo. Dec. 3, 2012), aff'd, 732 F.3d at
902).

Even with these shortcomings, the Court will decline to
dismiss Plaintiff's negligence claim here.  VGA asserts
elsewhere in its briefing that Plaintiff did not purchase his
vehicle from VGA, but rather an unaffiliated third party.
Courts have declined to apply the economic-loss doctrine when no
contract exists between the parties.  For instance, in Building
Erection Services Co., L.C. v. American Buildings Co. one
plaintiff entered into a purchase-order contract with the
defendant and later assigned its rights and interests to the co-
plaintiff.  No. 09–2104, 2010 WL 2667201, at *1-2 (D. Kan. June
29, 2010).  The assignee co-plaintiff later sued the defendant
for negligence and the District of Kansas rejected the
defendant's economic-loss argument at the summary judgment
stage, concluding that Missouri courts would permit negligence
claims when the allegedly violated duty arose from professional
services and "there [wa]s no direct contractual relationship
between the parties."  Id. at *5;[5] see also Nestle Purina PetCare
Co. v. Blue Buffalo Co. Ltd., 129 F. Supp. 3d 787, 792 (E.D. Mo.

---

[5] The District of Kansas did, however, conclude that the
economic-loss doctrine barred the assignee co-plaintiff's
negligent delay claim as it was listed as part of a breach-of-
contract claim in the pretrial order and the negligence claims
were limited to those of design.  Bldg. Erection Servs. Co.,
2010 WL 2667201, at *6.

Sept. 8, 2015) ("[A] threshold issue in any analysis concerning the economic loss doctrine is whether the parties entered into an enforceable contract, and if so, what the contract terms provide." (citing Tension Envelope Corp. v. JBM Envelope Co., No. 14-567, 2015 WL 893242, at *14 (W.D. Mo. Mar. 3, 2015))); Tension Envelope Corp., 2015 WL 893242, at *14-15 (permitting leave to amend the complaint because the court had not yet determined whether a requirements contract existed between the parties and "[i]f it [wa]s determined that no requirements contract existed between the parties, then the doctrine would not apply").

Though the economic-loss doctrine may ultimately apply, Plaintiff has not brought a contract claim and it is unclear at this stage in litigation what – if any – contract is relevant to this action.  The Court will thus decline to dismiss Plaintiff's negligent-misrepresentation claim.

**C. Count 4 – Plaintiff's Unjust Enrichment Claim**

The fourth and final count of the complaint is for unjust enrichment.  An unjust enrichment claim under Missouri law requires that the defendant was enriched by receiving a benefit, the enrichment was at the plaintiff's expense, and it would be unjust to permit the defendant to retain the benefit.  Hays, 297 F. Supp. 3d at 963.  "Unjust retention of benefits only occurs when the benefits were conferred (a) in misreliance on a right

22

or duty; or (b) through dutiful intervention in another's affairs; or (c) under constraint." Peel v. Credit Acceptance Corp., 408 S.W.3d 191, 216 (Mo. Ct. App. 2013) (quoting Howard v. Turnbull, 316 S.W.3d 431, 436 (Mo. Ct. App. 2010)). Unjust enrichment is an equitable remedy and "is warranted only where the legal remedies available to a plaintiff are inadequate or incomplete." May v. Makita U.S.A., Inc., No. 1:22-CV-79, 2023 WL 417487, at *6 (E.D. Mo. Jan. 26, 2023) (quoting Ballard v. City of Creve Coeur, 419 S.W.3d 109, 117 (Mo. Ct. App. 2013)).

VGA challenges Plaintiff's unjust enrichment claim by asserting that the complaint fails to establish a lack of an adequate legal remedy or that Plaintiff's purchase from a third party conferred a direct benefit to VGA. (ECF 41-1 at 15-16; ECF 48 9-10). Plaintiff responds that though he may not recover under both legal and equitable theories, he may pursue both in the alternative at this stage. (ECF 46 at 15-17). He further argues that VGA's argument that his purchase did not confer a direct benefit to VGA ignores the fact that he purchased a class vehicle from a third party and that he and class members conferred a benefit to VGA by overpaying for class vehicles sold at artificially inflated prices. (Id. at 17-18).

The Court finds support for Plaintiff's alternative-pleading argument. See Fed. R. Civ. P. 8(d)(3) ("A party may state as many separate claims or defenses as it has, regardless

of consistency."); see also Hays, 297 F. Supp. 3d at 963-64

("[A] plaintiff is 'certainly entitled to bring an unjust

enrichment claim as an alternative ground for relief.'" (quoting

Dubinsky v. Mermart LLC, No. 4:08-CV-1806, 2009 WL 1011503 *5

(E.D. Mo. Apr. 15, 2009))); but see May, 2023 WL 417487, at *6

(concluding, despite Rule 8 permitting alternative theories,

that the plaintiff could not bring an unjust enrichment claim

due to the adequate MMPA and implied-warranty remedies available

to him).  However, even if the Court were to permit alternative

pleading, it finds that Plaintiff's unjust enrichment claim must

be dismissed for failure to allege that Plaintiff conferred a

benefit to VGA.

Plaintiff alleges that VGA benefitted from Plaintiff and

class members overpaying for class vehicles.  (ECF 1 at p. 46).

While "a cause of action may still exist for unjust enrichment

even where the benefit was conferred indirectly," see Dorgan v.

Ethicon, Inc., No. 4:20-00529, 2020 WL 5372134, at *4 (W.D. Mo.

Sept. 8, 2020), Plaintiff asserts a more novel theory in his

opposition that VGA ultimately benefitted from Plaintiff's

purchase from a third party, (ECF 46 at 18).  The complaint does

not explain how VGA profited from Plaintiff's purchase from an

unaffiliated third-party dealer or even claim that VGA

originally sold the vehicle to the third party.  "[T]o state a

claim for unjust enrichment, a plaintiff must allege that a

benefit was conferred on the defendant by that <u>particular plaintiff</u>." <u>LifeScience Techs., LLC v. Mercy Health</u>, No. 4:21-cv-01279, 2022 WL 4547002, at *7 (E.D. Mo. Sept. 29, 2022) (emphasis added) (citing <u>Am. C.L. Union/E. Mo. Fund v. Miller</u>, 803 S.W.2d 592, 595 (Mo. 1991)); <u>see also</u> <u>Spera v. Samsung Elecs. Am., Inc.</u>, No. 2:12-cv-05412, 2014 WL 1334256, at *9 (D.N.J. Apr. 2, 2014) (applying New Jersey law after finding no conflict with Missouri law and concluding that the plaintiffs could not succeed in their unjust enrichment claim because they purchased from a retailer rather than the manufacturer and thus did not confer a benefit to the manufacturer for the purposes of an unjust enrichment claim).

Accordingly, because Plaintiff has failed to adequately plead that VGA was enriched by a benefit conferred by him, his unjust enrichment claim will be dismissed.

**IV. Conclusion**

For the reasons stated above, VGA's motion to dismiss, (ECF 41), will be granted in part and denied in part.

An Order consistent with this Opinion will be entered.


Date: <u>June 27, 2023</u>                      <u>s/ Noel L. Hillman</u>
At Camden, New Jersey             NOEL L. HILLMAN, U.S.D.J.